# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELAWARE LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MARY ELIZABETH MOORE, et al.,<br><br>Defendants. | Case No.: 18cv944-L (MSB)<br><br>**REPORT AND RECOMMENDATION TO GRANT JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT INVOLVING MINOR [ECF Nos. 35, 40]** |

On December 21, 2018, the parties filed their "Joint Motion for Approval of Settlement Agreement Involving Minor" ("Joint Motion") and supporting documents [ECF Nos. 35, 36, 40[1]]. The Joint Motion requests this Court approve the parties' Settlement Agreement, which equally divides the death benefit of an annuity between a decedent's estate (to which his adult and minor son are heirs) and his ex-wife, after the reimbursement of attorney's fees and costs to Plaintiff. This Court requested further briefing on certain topics from the parties, which was submitted on January 18, 2019 [ECF No. 50]. After a thorough review of the pleadings and supporting documents (ECF

---

[1] The Court notes that ECF Nos. 35 and 40 are two copies of the same Joint Motion for Approval of Settlement Agreement Involving Minor, filed by Plaintiff's counsel and counsel for defendants Ms. Mary Moore and the Estate of Richard Lynwood Moore with their respective declarations. Mr. Morrison's declaration is filed twice, as an attachment to ECF No. 40, and separately as ECF No. 36.

1

Nos. 28, 30, 35, 36, 40, 42, and 50), this Court recommends that the Joint Motion be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This case is an interpleader action brought by Delaware Life Insurance Company[2] ("Delaware Life") to settle the competing claims to a death benefit under an annuity contract ("The Annuity") that became payable upon the death of Richard L. Moore ("Decedent"). (See J. Mot. Join Parties, Attach. #3 Amended Compl. ("Amended Compl."), ECF No. 28-3, filed per Order, ECF No. 29.) The Annuity was jointly purchased in 2001 by Decedent and his then wife, defendant Mary Moore ("Ms. Moore"), at which point they named "Surviving Spouse" as 100% beneficiary and named no contingent beneficiary. (Id. at 4.) Decedent and Ms. Moore divorced on March 7, 2017. (See Scott G. Morrison Decl. ("Morrison Decl.") Exh. #2 Dissolution J. 45-51, ECF No. 36) Prior to their divorce, Decedent and Ms. Moore executed a Marital Settlement Agreement ("MSA"), by which they intended to continue to hold The Annuity jointly, and for each to own an undivided 50% interest. (See Morrison Decl. Attach. #1 MSA 21.) However, they never provided their agreement in the MSA to Delaware Life or took any action to change the beneficiary designations. (Amended Compl. at 6.)

Since there was no "surviving spouse" at the time of Decedent's death, under the terms of The Annuity, the entire amount of The Annuity would go to Defendant, Estate of Richard Lynwood Moore ("The Estate"). (See Amended Compl. at 4-5; J. Mot. to Join Parties Attach. #4 Exhibits to Amended Compl. ("Compl. Exhibits") 7, 11, ECF No. 28-4, filed per Order, ECF No. 29.) Since Decedent died intestate and unmarried, the heirs to The Estate are the two sons he shared with Ms. Moore, Defendants Kevin Moore and CMK, a minor. (Morrison Decl. at 3.) Delaware Life learned on January 28, 2018, that Ms. Moore claimed entitlement to 50% of the death benefit based on the MSA.

---

[2] Delaware Life was previously Sun Life Insurance Company, and changed its name to Delaware Life July 21, 2014. (J. Mot. at 3.)

(Amended Compl. at 5-6.) Delaware Life filed the instant interpleader action with Ms. Moore and The Estate as defendants on May 14, 2018, to settle their potentially conflicting claims to half of The Annuity. (See Compl., ECF No. 1.) Because this case involves an annuity rather than a life insurance policy, Plaintiff would only have been able to value the death benefit and deposit the funds with the Court after obtaining a court order to liquidate the annuity. (J. Suppl. Brief 5, ECF No. 50.) However, counsel for Ms. Moore and The Estate urged Plaintiff to maintain the account, which Plaintiff has done. (Id.)

Having previously been approved as the administrator of The Estate in the Probate Court for the Superior Court of California, County of San Diego ("Probate Court"), on September 27, 2018, Ms. Moore filed in that court an Ex Parte Petition for Order Authorizing the Administrator to Execute a Settlement Agreement and/or other Pleadings to Allow for the Equal Distribution of Annuity Benefit Between the Estate and Administrator ("Ex Parte Petition"). (See Morrison Decl. Attach. #3 Ex Parte Petition 52-58.) Prior to ruling on the Ex Parte Petition, the Probate Court appointed Jeffrey T. Vanderveen, Esq., to serve as Guardian Ad Litem ("GAL") for CKM. (Morrison Decl. Attach. #4[3] GAL Report 60.) Mr. Vanderveen reviewed the relevant pleadings from both the instant case and the Probate Court and interviewed Ms. Moore before filing a report in which he recommended that the Probate Court approve the Ex Parte Petition. (Id. at 61-63.) The Probate Court granted the Ex Parte Petition on November 9, 2018, permitting Ms. Moore to execute a settlement agreement dividing the proceeds of The Annuity equally between The Estate and Ms. Moore. (See Morrison Decl. Attach. #5 Order 67-69.)

With authority from the Probate Court, Ms. Moore, acting on her own behalf and as the administrator of The Estate, entered into a Settlement Agreement with The

---

[3] The Court refers to Attachment 4, as Mr. Morrison titled this document Exhibit 4 in his declaration, despite the fact that it appears to have been accidentally labeled as a second Exhibit 3.

3

Estate and her sons (the minor CKM through his GAL) to divide The Annuity equally between the Estate and Ms. Moore after reimbursing Delaware Life for payment of partial attorneys' fees of $58,480.76, which Delaware Life claims to have incurred in connection with this interpleader proceeding. (See Morrison Decl. Attach. #6 Settlement Agreement 75-76; Notice of Settlement Agreement 5, ECF No. 30.) All parties to the Settlement Agreement then filed a Joint Motion with the Court requesting to join Kevin Moore and CKM as parties, file a First Amended Complaint, distribute the proceeds of The Annuity, reimburse Delaware Life for attorneys' fees and costs, and dismiss the action. (See J. Mot. to Join Parties, ECF No. 28.) On December 6, 2018, the Honorable District Judge M. James Lorenz ruled on the motion. (See Order, ECF No. 29.) Judge Lorenz granted the motions to join parties and file the First Amended Complaint, but instructed the parties to submit their Settlement Agreement to this Court for review pursuant to Civil Local Rule 17.1, particularly with regard to Plaintiff Delaware Life's request for $58,480.76 in attorneys' fees and costs. (Id. at 2.)

This Court requested additional briefing from the parties in support of their joint request to approve the settlement involving a minor [ECF No. 33]. The parties filed the instant Joint Motion, which they support with the Amended Complaint and attached exhibits, the Settlement Agreement, declarations of counsel, the application and contract for The Annuity, Plaintiff's billing summary, and Probate Court documents, including the GAL Report and Probate Court's Order. (J. Mot., ECF Nos. 35, 36, 40, 42.) In response to the Court's request for additional briefing on specific issues, the Parties filed a Joint Supplemental Brief in Support of Joint Motion for Approval of Settlement Agreement Involving Minor [ECF No. 50] and Plaintiff's Counsel's billing rates, and number of hours worked and costs by month [ECF No. 55] on January 18, 2019.

## II. DISCUSSION

A. **Legal Standard**

Civil Local Rule 17.1 describes the Court's special review of settlement proposals to protect the interests of involved minors: "No action by or on behalf of a minor . . ., or

4

in which a minor . . . has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment. All settlements and compromises must be reviewed by a magistrate judge before any order of approval will issue." This rule implements the court's special duty to safeguard the interests of minor litigants, derived from Rule 17(c) of the Federal Rules of Civil Procedure. See Robidoux v. Rosengren, 683 F.3d 1177, 1181 (9th Cir. 2011).

Several cases have held that interpleader actions that are brought in federal court based on diversity of citizenship and address state law contract claims should be subject to California law when evaluating the fairness of a Settlement Agreement involving a minor. See, e.g., Primerica Life Ins. Co. v. Cassie, No. CIV. 2:12-1570 WBS, 2013 WL 1705033, at *1 (E.D. Cal. Apr. 19, 2013); Anthem Life Ins. Co. v. Olquin, No. 1:06-cv-1165 GSA, 2008 WL 1366103, at *4 (E.D. Cal. Apr. 9, 2008); Chance v. Prudential Ins. Co. of America, No. 1:15-cv-01889-DAD-JLT, 2016 WL 3538345, at *2 (E.D. Cal. June 28, 2016); Mitchell v. Riverstone Residential Grp., No. Civ. S-11-2202 LKK/CKD, WL 1680641, *2 (E.D. Cal. Apr. 17, 2013). They distinguish such cases from Robidoux v. Rosengren, where the Ninth Circuit provided guidance for a district court considering whether to approve a proposed settlement involving minors, noting that the Robidoux Court limited its ruling to a minor's federal claims. See Primerica, 2013 WL 1705033, at *1 (citing Robidoux, 638 F.3d at 1179 n. 2); cf. Lobaton v. City of San Diego, Case No. 15-cv-1416 GPC (DHB), 2017 WL 2298474, at *2 (S.D. Cal. May 26, 2017) (applying Robidoux in a case where the minor's claim was based on supplemental jurisdiction to a federal question case); Frary v. County of Marin, Case No. 12-cv-03928-MEJ, 2015 WL 575818, *2 (applying Robidoux to case involving both state and federal claims); Doe ex rel. Scott v. Gill, Nos. C 11-4759 CW, C 11-5009 CW, C 11-5083 CW, 2012 WL 1939612, *2 (N.D. Cal. May 29, 2012 (applying Robidoux to review of settlement of both state and federal claims). As in Primerica, this case is a matter of state contract that is in federal court based on diversity jurisdiction. (See Amended Compl. at 2.) Given the authority cited

above, this Court will accordingly follow California state law to review the parties' proposed settlement.

B. **Equal Division of The Annuity between Ms. Moore and The Estate**

The District Court specifically directed the parties to submit their Settlement Agreement to the Magistrate Judge regarding "the extent Plaintiff Delaware Life requests a reasonable attorneys' fees and costs award in the amount of $58,480.76." (See Order.) Nevertheless, the Court will briefly address the division of The Annuity equally between Ms. Moore and the Estate after payment of Plaintiff's attorneys' fees.

The Court finds that the equal division of The Annuity is an equitable and reasonable resolution of this interpleader and declaratory relief proceeding. In the first instance, such a division recognizes the intent of Decedent's MSA with Ms. Moore, which specifically described their intention of dividing The Annuity equally between them, with their children to inherit the half owned by either of them in the event of a death. The half of The Annuity that goes to The Estate will be shared by Kevon Moore and CKM, the Moore's sons. Additionally, this prompt and uncontested resolution will prevent further depletion of the res of The Annuity to legal fees. The Court further notes that this resolution is desired by each of the defendants, including the minor's adult brother, Kevin Moore, whose interest in this Settlement is similar to the minor's. That CKM, through his GAL, has himself joined the Joint Motion is also significant to this Court because, while CKM remains a minor, he is sixteen years old and with the assistance of his GAL, the Court finds his position relevant. Finally, and significantly, the Probate Court, with the input of CKM's GAL, has already approved this division of The Annuity between The Estate and Ms. Moore.

C. **Plaintiff's Attorneys' Fees and Costs**

The Court now turns to the attorneys' fees reimbursement that the parties request be paid to Plaintiff from The Annuity, in the amount of $58,480.76. The defendants have not detailed their precise rationale for the attorneys' fees and costs amount of $58,480.76 in the Settlement Agreement. However, in the parties' Joint

6

Motion for Approval of Settlement Agreement Involving Minor, they explain that "[t]he parties have agreed to partially reimburse Delaware Life its reasonable attorneys' fees and costs in the amount of $58,480.76." (J. Mot. at 8.) In support of this payment, the parties argue (1) that all defendants, including the GAL for CKM have agreed to the sum; (2) that in fact, Plaintiff has incurred fees and costs of over $70,000, and continues to incur fees and costs for which it is not seeking reimbursement; (3) that numerous issues have required substantial legal work in this case; (4) that a significant portion of the legal services were for CKM's benefit, pursuant to the probate court's determination that CKM's interests were at-issue, the appointment of his GAL, and the delay resulting delay to the resolution of this case; and (5) that the amount is less than 3% of the total value of The Annuity. (Id. at 8.) More specific records submitted by Plaintiff's Counsel demonstrate that in invoices dated from February 2018 to December 2018, they billed Plaintiff $590.36 in costs and that they spent more than 196.1 attorney hours which they claimed were related to this case. (Billing Summary, ECF No. 42 and Accounting of Attorneys' Fees and Costs, ECF No. 55.) This amount did not include time spent finalizing and filing the joint motions to resolve this case that were filed on December 5, 2018 [ECF No. 28], or any of the briefing in support of minor's compromise since then.

     As discussed above, in this contract case before the Court on diversity grounds, this Court applies California law regarding the Court's role reviewing legal fees in settlements in which a minor holds an interest. The California Probate Code provides that expenses, including attorneys' fees, to be paid out of the settlement in which a minor has an interest must be approved by the court. Cal. Prob. Code §§ 3600, 3601 (West 2018). Therefore, where a minor has an interest in an interpleader, which is affected by the payment of such attorneys' fees, the Court must review the reasonableness of those fees before approving a proposed settlement. See, e.g., Primerica, 2013 WL 1705033, at *2.

     Courts are acquainted with the process of reviewing interpleader counsel's requests for reasonable fees and costs, since they are often requested when

interpleader counsel moves to be dismissed from a case after depositing the interpled funds. While it is generally accepted that the disinterested plaintiff who seeks to distribute the entire res to claimants in an interpleader action can recover attorneys' fees and costs, such recovery is at the Court's discretion and the reasonableness of those fees are carefully reviewed, even when there is no minor involved in the litigation. See, e.g., Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426–27 (9th Cir.), opinion amended on denial of reh'g, 255 F.3d 661 (9th Cir. 2000) (upholding District Court's award of only $3,000 in fees when interpleader plaintiff requested $97,000). This general approach to Plaintiff's attorneys' fees in interpleader actions makes it incumbent upon this Court to carefully review the attorney-fee portion of this settlement—a disinterested interpleader plaintiff should not be permitted to remain in a case and engage in settlement with defendants, and thereby evade judicial review of the reasonableness of its attorneys' fees.[4]

In an interpleader action, "[c]ompensable expenses include, for example, preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action." Id. at 427 (citing Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194 (9th Cir. 1962)). Because the scope of compensable expenses is limited, attorneys' fee awards to disinterested interpleader plaintiffs are typically modest. Id. The interpleader plaintiff bears the burden to establish entitlement to attorneys' fees. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). "[I]f there is a contest

---

[4] This case raises particular concern in this regard as the Settlement Agreement in this case was entered into by only Defendants. (See Notice of Settlement Agreement, ECF No. 30.) It did not need to include a specific amount for attorneys' fees since the Plaintiff was not a signatory. Nevertheless, it includes an agreement to provide the specified attorneys' fees to Plaintiff. (Id. at 5.) Had the parties simply agreed to the repayment of unspecified attorneys' fees, the Court would have properly reviewed Plaintiff's claimed fees as is customary in interpleader actions. Allowing such a procedure would permit the disinterested interpleader plaintiffs' attorneys to insulate their claims for attorneys' fees from the customary judicial discretion and review.

between plaintiff and the interpleaded parties, either as to the correctness of the amount deposited or as to any interest of plaintiff in the fund, the court may not, in the absence of special circumstances, award attorney fees for the services of his attorneys in connection with such contest." Schirmer, 306 F.2d at 194.

The Court uses a lodestar analysis to ascertain the appropriate amount of attorney's fees. Allianz Life Ins. v. Agorio, 852 F.Supp.2d 1163, 1166-67 (N.D. Cal. Feb. 10, 2012); Casey Gerry Schenk Francavilla Blatt & Pennfield LLP v. Estate of Cowan ("Estate of Cowan"), No. 10CV821-CAB-KSC, 2013 WL 12064476, at *2 (S.D. Cal. July 25, 2013). In the first instance, this Court has reviewed the billing rates and experience of Plaintiff's attorneys (see Nancy Marr Decl. Exh. B, ECF No. 55; J. Suppl. Brief, Suppl. Decl. of Nancy J. Marr 2, ECF No. 50-1), and finds Plaintiff counsels' rates are reasonable in light of their experience and skill. See, Allianz, 852 F.Supp.2d at 1169 (reducing interpleader counsel's lodestar rate to $350).

As to the number of hours submitted by a party's counsel, "a fee applicant must show that she exercised billing judgment in the preparation of the attorney's fee application and that the requested hours were reasonably expended." Allianz, 852 F.Supp.2d at 1169 (citing Hensley, 461 U.S. at 433 (1983)). As the parties have explained and their submissions demonstrate, Plaintiff's counsel spent a significant amount of time providing legal services in this case, due to both the nature of fund at-issue and Defendants' preferences. While many cases may proceed with Plaintiff's counsel simply drafting the complaint, serving defendants, depositing the funds, and preparing an order to be dismissed from the case, Plaintiff here has done more. More specifically, as the parties' explain, because this case deals with an annuity rather than a life insurance policy, the funds are in various active accounts and cannot be valued until Plaintiff liquidates them pursuant to court order. (J. Suppl. Brief 5.) Defendants asked Plaintiff to instead maintain the accounts, and Plaintiff has obliged. (Id.) This means that Plaintiff remains a party to the litigation. Further, the attention to safeguarding CKM's interests in this case have added significant delay by postponing settlement, raising new

legal issues, and imposing additional procedural and briefing requirements. (See id. at 5-7.) Plaintiff's counsel has researched law and procedure and drafted and filed pleadings necessary to move this case forward. (See id.) Plaintiff's counsel continues to provide assistance to Defendants, and is not seeking further remuneration. (Id. at 6.) These unusual circumstances support some of the agreed upon attorneys' fees.

On the other hand, much of the work included on Plaintiffs' counsel's billing summary appears to be work for which an interpleader plaintiff cannot reasonably be reimbursed. Plaintiff's counsel spent a significant amount of time on background research to ascertain the circumstances and determine whether interpleader was necessary at all, for both The Annuity that was the basis of this case and a second annuity purchased by The Moores from Plaintiff. For instance, all of the work billed on the February 2018 Invoice appears to fall within this category. (Summary of attorneys' Fees and Costs, ECF No. 42 at 2.) The same is true for much of the legal work billed on the March, April, and May 2018 Invoices. (Id.) This background research would have been necessary whether interpleader was instituted or not, and is a non-recoverable part of Plaintiff's administrative costs.

That such background investigation and analysis was necessary regardless of whether an interpleader was instituted is demonstrated well by the different treatment given to the two accounts that Decedent and Ms. Moore purchased from Plaintiff—annuity accounts ending in -2143 and 1940. Ms. Moore and the Estate submitted claims to both of these accounts. (J. Suppl. Brief at 4.) While the initial research and investigation into the underlying contracts, the MSA, Decedent's death, and so on, applied to both of these accounts, the -2143 account was ultimately distributed without litigation and the -1940 account was the subject of this litigation. (Id.) For this reason, the Court concludes that tasks associated with assessing the possible claimants to a fund are not recoverable as interpleader attorneys' fees.

In addition to background investigations, any other services performed in relation to the -2143 are unrelated to this interpleader and are not recoverable. Plaintiff's

counsel notes that "fees incurred for the [-2143] contract were not invoiced separately, but at times were denoted separately. Based on itemized invoices, Plaintiff estimates total fees relating to the first contract at $6,007.50." (Id.) Based on this representation, the Court understands that this estimate is likely low since the Plaintiff's counsel only "at times" denoted the work on each of the accounts separately.

Similarly work that relates to Plaintiff's counsel providing information to Defendants regarding distribution elections appears to have been necessary for both the -2143 and the -1940 accounts, and was not sufficiently related to this interpleader action. Providing claimants with information related to the claims process is simply part of the administrative tasks for disbursal of annuities like the ones the Moores purchased from Plaintiff, regardless of whether they are subject to interpleader. Plaintiff's counsel estimates that $1,430 in her office's billing was "for tasks noted as tax issues of Plaintiff's Exhibit A" and actually pertained to providing information about the claim process, election or distribution. (J. Suppl. Brief at 3.) There are several additional notations in the billing summary for the provision of information pertaining to these topics, which are evidently over and above that $1,430 figure. Fees for such services are not recoverable.

Another category of work which Plaintiff may not recover is work related to Plaintiff's recovery of attorneys' fees. See Allianz, 852 F.Supp.2d at 1170 (citing Schirmer, 306 F.2d at 194 and refusing to award attorney's fees for the pursuit of fees and costs). According to Plaintiff's counsel, her firm spent half an hour researching authority for Plaintiff's recovery of fees and costs on March 22, 2018. (Suppl. Marr Decl. at 2.) However, the Court also notes that any work performed calculating fees for the Settlement Agreement and preparing fees portion of the joint motion [ECF No. 28] would also not be recoverable. To the extent this case continues for the Court to review the attorney fee provision in the settlement agreement, ongoing litigation in support of the settlement is similarly unrecoverable.

Finally, it seems that much of the work on this case was done in an inefficient manner.  For example, the interpleader complaint was evidently drafted in February of 2018, and initially included both accounts -2143 and -1940, then was revised several times as facts and analysis developed.  (See Billing Summary, ECF No. 42 at 2; J. Suppl. Brief at 4.)  Furthermore, it appears that Plaintiff's counsel billed for research that would not be relevant for a disinterested interpleader plaintiff, such as the issue of analyzing a possible conflict of interest arising due to Ms. Moore's appointment as the administrator of the estate.  (Billing Summary at 3.)  Furthermore, the Court questions the necessity of interpleader in this case and Plaintiff's continued involvement.  Plaintiff ultimately took no position regarding the settlement between Defendants, but rather than seeking dismissal from the Court and leaving the Defendants to resolve this case, Plaintiff remained in this case and seeks to resolve it through a settlement agreement that the Defendants appear to have proposed, at least with regard to the division of The Annuity between them, prior to the filing of this interpleader action.  (See id. at 2.)  In light of the fact that Plaintiff now seeks release through a settlement agreement, the necessity of this case seems doubtful.

In consideration of all of the above observations, Plaintiff's counsels' roughly 200 hours of work in 2018 on this case are largely not.  This Court believes it is appropriate for Plaintiff to recover reasonable attorneys' fees related only to its necessary legal research, drafting, and filing of the Complaint [ECF No. 1], its Notice and Amended Notice of Party with Financial Interest [ECF Nos. 2, 5], Waivers of Service [ECF Nos. 6, 7], Joint Motion for Extension of Time to File Answer [ECF No. 8], Joint Motion to Continue the Early Neutral Evaluation Conference [ECF No. 19], Joint Discovery Plan and Joint Early Neutral Evaluation Conference Statement, joint motions to join parties, file first amended complaint, for distribution of proceeds and for discharge and dismissal of action with prejudice [ECF No. 28].  Similarly, Plaintiff should be reimbursed for Plaintiff's counsel's preparation for and appearance at the November 28, 2018 telephonic Early Neutral Evaluation Conference [ECF No. 27], and the December 10,

2018 telephonic Status Conference [ECF No. 32]. The Court believes that a reasonable number of attorney hours for these tasks is 70 hours given Plaintiff's counsels' significant experience and knowledge in the subject area. Applying first attorney Daniel Maguire's hours at his higher rate, and the remainder of hours at Nancy J. Marr's hourly rate, the Court believes that a total of $██████ should be paid to Plaintiff for attorneys' fees from the proceeds of The Annuity. The Court finds the claimed attorneys' costs of $590.36 are both reasonable and supported by the needs of the case. Together, this justifies an attorneys' fees and costs reimbursement of $██████ to Plaintiff. This sum reflects the legal work reasonably performed on a case that was more complex than most and in which the Plaintiff remained a party until the case's resolution at Defendants' request, while also considering the limited types of expenses for which an interpleader plaintiff can recover. See, e.g., Estate of Cowan, 2013 WL 12064476, at *1-*2 (granting attorneys fee and cost award of $21,965.91 after Plaintiff claimed $33,055.4, noting that the case was more complicated than most interpleader actions because of ongoing litigation between claimants in other forums); Allianz, 852 F.Supp.2d at 1169-70 (applying a lodestar analysis and reducing the reasonable number of attorney hours from 85.5 to 8 based on Plaintiff's experience, lack of complexity, inefficiencies, quality of papers submitted, concern about depleting the fund, and necessity of interpleader), Primerica, 2013 WL 1705033, at *2 (approving attorneys' fees award after Plaintiff agreed to reduce amount from $6,556 to $4,370.67 in interpleader where some of the claimants were minors and the case was resolved by prompt settlement); and Prudential Ins. Co. of America v. Estate of Norva, No. CV 07-00616 SOM-LEK, 2009 WL 5126340, at *5-*6 (D. Haw. Dec. 28, 2009) (reducing attorneys' fees and costs award in interpleader case from $53,448 (already reduced from the billed amount) to $25,000).

### III. CONCLUSION

As explained more fully above, because a minor defendant has an interest in the settlement of this case, the Court has reviewed the defendants' proposed Settlement

Agreement as required by California law.  The Court finds the equal division of The Annuity between Ms. Moore and The Estate to be a fair and reasonable resolution of this case in the interests of the minor, CKM.  Applying the Court's discretion to review the claimed attorneys' fees and costs requested by interpleader Plaintiff Delaware Life, the Court finds the proposed amount of $58,480.76 is excessive and unreasonable in this case.  The Court suggests that the District Court approve the Settlement if the attorneys' fees and costs awarded to Plaintiff are reduced to $██████.

     This Report and Recommendation will be submitted to United States District Court Judge M. James Lorenz, under the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the district court and serve a copy on all parties on or before **March 7, 2019**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **March 21, 2019**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

     **IT IS SO ORDERED**.

Dated:  February 21, 2019

_____
Honorable Michael S. Berg
United States Magistrate Judge